UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| | : | **1:09CR---20** |
| v. | : | |
| | : | **INDICTMENT** |
| | : | |
| **GENEO BRONSON (1)** | : | 21 U.S.C. § 846 |
| **DARNELL HUFFMAN (2)** | : | 21 U.S.C. § 841(a)(1) |
| **DAVID KEMP (3)** | : | 21 U.S.C. § 841(b)(1) |
| **QUINELL HADDEN (4)** | : | 21 U.S.C. § 853 |
| | : | |
| | | **J. SPIEGEL** |

The Grand Jury charges that:

### COUNT 1

Beginning on or about December 9, 2008, and continuing up to and including February 10, 2009, in the Southern District of Ohio, **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN**, the defendants herein, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally, and unlawfully distribute and attempt to distribute and possess with intent to distribute five kilograms or more of cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846 and §§ 841(a)(1) and (b)(1). *

*Indictment amended per Order of the Court on 4/30/09, 5/6/09, 5/14/09 and 10/6/09.

It was a part of the conspiracy that **GENEO BRONSON** arranged for the purchase and delivery of a multi-kilogram quantity of cocaine in the Southern District of Ohio to **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN** by a person known to the Grand Jury.

It was a part of the conspiracy that **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN** would further distribute the multi-kilogram quantity of cocaine to persons known and unknown in Cincinnati, Ohio, and elsewhere.

It was further part of the conspiracy that **GENEO BRONSON** made a series of telephone calls and met with a person known to the Grand Jury that **BRONSON** believed to be a supplier of multi-kilogram amounts of cocaine during which it was agreed that **BRONSON** would meet the supplier and give that person United States currency in exchange for five (5) kilograms of cocaine.

It was further part of the conspiracy that **GENEO BRONSON, DARNELL HUFFMAN,** and **DAVID KEMP** made an agreement between themselves as to the financing of the purchase, and the distribution of the cocaine once acquired from the drug supplier.

It was further part of the conspiracy that **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN** agreed that **QUINELL HADDEN** would serve as the driver to, and from the location where they were to

2

meet with the person known to the Grand Jury whom they believed to be the supplier and acquire the five (5) kilograms of cocaine.

It was further part of the conspiracy that **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN** agreed between themselves to travel together to the location agreed upon by **BRONSON** to purchase the cocaine from the person known to the Grand Jury whom they believed to be the drug supplier.

It was further part of the conspiracy that, once at the location agreed upon, **GENEO BRONSON** was to meet with the person known to the Grand Jury that **BRONSON** believed to be a supplier of multi-kilogram amounts of cocaine and give that person United States currency in exchange for five (5) kilograms of cocaine, while **DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN** were to wait nearby in a vehicle for the transaction to be completed.

It was further part of the conspiracy that, once **GENEO BRONSON** acquired what he believed to be the (5) kilograms of cocaine, **BRONSON** and **DARNELL HUFFMAN** would speak via mobile telephone whereupon **QUINELL HADDEN** would immediately drive the vehicle containing himself, **DARNELL HUFFMAN** and **DAVID KEMP** to the cocaine-purchase location, retrieve **BRONSON** and the cocaine, and depart in order to further distribute the cocaine.

In furtherance of the conspiracy and in order to accomplish its objectives the defendants committed among others the following;

3

## OVERT ACTS

1. On December 9, 2008, **GENEO BRONSON** and a person known to the Grand Jury whom **BRONSON** thought was selling five kilograms of cocaine met at a restaurant located at 2692 Madison Road for the purpose of negotiating a cocaine transaction. **DAVID KEMP** was present at this meeting. During this encounter, **BRONSON** agreed to purchase cocaine for $25,000 per kilogram. **KEMP** and **BRONSON** arrived and departed in a black Cadillac DeVille bearing Ohio license R294489.

2. On January 29, 2009, **GENEO BRONSON** again met with the person known to the Grand Jury whom he thought was selling five kilograms of cocaine at a restaurant located at 2692 Madison Road, for the purpose of further negotiating a cocaine transaction. On this occasion, **BRONSON** stated that he was ready to make the transaction.

3. On February 10, 2009, **GENEO BRONSON** met again with the person known to the Grand Jury whom he believed was a cocaine seller, this time in the vicinity of 1246 Hopple Street. Present with **BRONSON**, although not actually a party to the meeting with the other person, was **DARNELL HUFFMAN**. During this meeting, **BRONSON** and the other person negotiated that **BRONSON** would deliver $55,000 for five kilograms of cocaine with the understanding that an additional amount of money would be

4

paid in the very near future. **BRONSON** also stated that he would try to collect money from others to increase the initial payment. In a subsequent call, **BRONSON** told the other person that he (**BRONSON**) had collected an additional $10,000 and arranged to meet the other person at approximately 8:15 p.m. and trade the $65,000.00 for five kilograms of cocaine.

4. On February 10, 2009, **QUINELL HADDON** drove **DARNELL HUFFMAN** and **GENEO BRONSON** to a gas station on the corner of Colerain Avenue and Hopple Street for the purpose of consummating the cocaine transaction. **BRONSON** crossed the street to 1246 Hopple Street, while **HADDON** and **HUFFMAN** waited in the car. While **BRONSON** was meeting with the other person, **DAVID KEMP** arrived at the gas station and entered the car with **HUFFMAN** and **HADDON**.

5. On February 10, 2009, **DARNELL HUFFMAN** and **GENEO BRONSON** communicated via mobile phone, whereupon **QUINELL HADDON** immediately drove **HUFFMAN** and **DAVID KEMP** to 1246 Hopple Street to collect **BRONSON** and what they believed was the cocaine.

6. On February 10, 2009, after **DARNELL HUFFMAN, QUINELL HADDON**, and **DAVID KEMP** arrived at 1246 Hopple Street, **GENEO BRONSON** made a transaction, trading the $34,416 for what he believed to be five kilograms of cocaine. **BRONSON**, carrying what he believed was the cocaine,

5

next entered the car driven by **HADDON** and containing **KEMP** and **HUFFMAN**.

7. On February 10, 2009, after making the transaction, the car occupied by **QUINELL HADDON, DARNELL HUFFMAN, DAVID KEMP**, and **GENEO BRONSON** was approached by law enforcement officers who were clearly identified as such. **BRONSON** ordered **HADDON** to flee and **HADDON**, believing a drug transaction had just taken place and knowing that law enforcement was consequently approaching, fled 1246 Hopple Street driving the car.

8. On February 10, 2009, as **QUINELL HADDON, DARNELL HUFFMAN, DAVID KEMP**, and **GENEO BRONSON** fled from the law enforcement officers, the car operated by **HADDON** bore down on some law enforcement officers who were on foot and subsequently struck an unmarked police vehicle, injuring a law enforcement officer. The car had at least two other collisions such that it was ultimately rendered inoperable. Once the car came to a stop, **HUFFMAN** and **KEMP** fled on foot from pursuing law enforcement officers. **BRONSON** and **HADDON** remained in the car. All were taken into custody and the bag which **QUINELL HADDON, DARNELL HUFFMAN, DAVID KEMP**, and **GENEO BRONSON** believed contained cocaine was recovered from the car. Later, $34,416 was recovered from inside another car into which

**BRONSON** had deposited this sum in payment for what he believed was five (5) kilograms of cocaine.

**In violation of 21 U.S.C. § 846.**

## COUNT 2

On or about February 10, 2009, in the Southern District of Ohio, **GENEO BRONSON, DARNELL HUFFMAN, DAVID KEMP** and **QUINELL HADDEN**, the defendants herein, did knowingly, willfully, intentionally, and unlawfully attempt to possess, with intent to distribute, five kilograms or more of cocaine, a Schedule II Controlled Substance.

**In violation of 21 U.S.C. § 846 and §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2.**

### Forfeiture Allegation

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Counts 1 through 2, each defendant shall forfeit to the United States:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

### Substitute Assets

Pursuant to 21 U.S.C. § 853(p), if any of the property that is forfeitable to the

7

United States under 21 U.S.C. § 853(a), as a result of any act or omission of the defendants,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the Court shall order the forfeiture of any other property of the defendants up to the value of any property described in paragraphs (1) through (5).

A True Bill.

/s/

Grand Jury Foreperson

GREGORY G. LOCKHART
United States Attorney

ANTHONY SPRINGER
Deputy Criminal Chief

8