FILED
JAMES BONINI
CLERK

09 JUN 12 PM 2:50

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

United States District Court
Southern District
Western Division

United State America : Case No.: 1:09CP20(3)

: Judge: S. Arthur Spiegel

V.

David Kemp : Motion To Dismiss Indictment
(Defendant): For Insufficient Evidence


Now comes The defendant, Independent of Retained Counsel, Submitting before The court a Claim of Evidentiary Insufficiency and Prosecutorial Misconduct. The details and fact Supporting The Averments Are more fully Set Forth in The Memorandum in Support.

Respectfully Submitted,
David Kemp
Butter County Jail
705 Hanover St
Hamilton, Ohio.
45011

(1)

Branch 1

Where The government's Factual theory of Conspiracy and drug possession, put before the Grand Jury Failed to meet its Onus of proof (A) That the defendant David Kemp ("Kemp") was present at A drug meeting on December 8, 2008, (B) That he was observed arriving and departing to and from A Specified location, And (c) That he invested An Undetermined Amount Of currency along with the principal offender Geneo Bronson ("Bronson") And Darnell Huffman ("Huffman") for the Ultimate purpose of consumating (1) The object, (2) The plan (or Scheme), And (c) The Agreement or understanding between the Conspirators, the Subsequent Accusatory pleading Should not have issued where no Independant proof Supported its underlying premise. Ex parte Bain, 121 U.S.1 (1886)[1] Under The pleading Rule prevailing under Bain, an offense was not charged if any of the Alterna--tive actions cited in the Indictment did not Constitute A crime. Mere Association with, or Knowledge of, an Existing Conspiracy is not Enough to Show participation in that Conspiracy.

[1] See, United State v. Williams, 504 U.S. 36 (In applying due process to misconduct challenges, courts have looked to the traditional Fundamental Fairness Standard of due process and the Application of that Standard at trial. Thus, They Require that prosecutor not have coerced, deceived, or inflamed the grand Jury through Actions that would be deemed a due process Violation At trial if done to manipulate a trial Jury (i.e. flagrant improprieties in Argument, Knowing use of per Jured Testimony, intentional with holding of

(2)

United State v. Benfeo, 1020 F.2d 569 (C.A.6 (Mich.), 1980); United-State v. Bostic, 480 F.2d 965 (C.A.6 (Tenn.), 1973) This case involves a major deficiency in proof so fatal and opposed to the concept of Fairness that the defendant asserts it can only be cured by dismissal. Ex parte Bain, 121 U.S.1 (1886). While one might not demand that the precise Evidentiary basis presented to the Screening Agency, be the grounding for the charge presented by amendment, the basic factual theory of the offence arguably should remain the same or the defendant has not truly had the particular charge against him screened by that agency. id. Where the defendant can demonstrate that the Evidentiary proof is at such variance to the Factual Theory Raised in his accusatory pleading, The Federal Court Recognizing a limited Misconduct Exception to the Costello prohibition, Considering the Circumstances of this Case, should be compelled to depart From the Costello Rule Allowing the defendant to challenge the total Absence of evidence on the Necessary Elements of title 21 U.S.C §§ 841 and 846 [2]


Exculpatory Evidence, Etc.

[2] Costello v. United States, 350 U.S. 46 (1956) (The Costello opinion Rejected challenges not only to competency of Evidence, but also of its Sufficiency to Establish the quantum of proof needed for an Indictment. Justice Black noted that the Judicial Response to an indictment should be governed by a single, overriding principle: "An Indictment Returned by a legally Constituted and unbiased grand Jury ... if valid on its face

( 3 )

The broad Rule of Costello, the defendant Argues, can be Justified only if the institution of the grand Jury is Viewed As Anachronism." If the Grand Jury is to protect *** "the innocent Against oppression And unjust prosecution", A defendant "with substantial grounds for having An Indictment dismissed should not be Compelled to go to trial to prove the insufficiency." [3] Bank of Nova Scotia v. United States, 486 U.S. 250 (1988) ("Dismissal of the Indictment is Appropiate only if it Established that the violation substantially Influenced the Grand Jury's decision to indict", or if there is "grave doubt" that the decision to indict was Free From the Sub--stantial influence of such Violations.") In the Grand Jury Setting, The Federal Court must go beyond the question of whether the Grand Jury had before it Sufficient Evidence of guilt. Misconduct may be so influential as to make it likely that the Grand Jury gave it great weight in deciding to indict notwithstanding that the untainted Remainder of the prosecution's


[3], Is enough to call for a trial of the charge on the merits.) See, Albright v. Oliver, 510 U.S. 266 (1994) (holding that Substantive due process Afforded no protection Against governmental initiation of a prosecution based on information known to be unreliable See, Generally, Stirone v. United States, 361 U.S. 212 (1960) (The Rule prohibiting the Constructive Amendment of Accusatory pleadings); United States v. Miller, 471. U.S. 130 (1985)

(4)

presentation would have been sufficient to support indictment. United States v. Mechanik, 475 U.S. 66 (1986) (The Court opinioned that it was appropiate to conclude that "Reversal of a conviction after trial Free From Reversible ERROR cannot Restore to defendant whatever benefit might have accrued to him From a trial on an indictment Returned in Conformity with Rule 6(d)") [4] Considering there is no Evidence connecting the defendant to the offenses charged against him, that is, Independant Evidence Excepting the confessions of his alleged Co-conspirators [5] The PER SE harmless ERROR Rule set up in Mechanik Falls outside the Context of Kemp's case

[4] Kemp Request the trial Judge uphold his objection to the variance Asserted, and should the court not allow amendment then he Request the issue be Removed From his case and consequently giving him no Reason to object and precluding the prosecution appellate Review of the trial Court Ruling. If there is insufficient Evidence to Convict without the variance, and Kemp is acquittad, The district Attorney will be prohibited from challenging the verdict. Jackson v. Virginia, 443 U.S. 307 (1979); Kepner v. United States, 195 U.S. 100 (1904). A Failure to object to the variance at trial generally is viewed as a waiver of a claim of prejudice, so Kemp Raises his Objection timely.

[5] See, generally, Dutton v. Evans, 400 U.S. 74 (1970) (The Supreme Court upheld the use of hearsay Evidence in the Form of a statement by a co-conspirator not on trial made during

(5)

The defendant asserts somewhat gaurdedly that there exists a strong presumption that the district attorney has induced the government's witnesses to commit perjury and has permitted Drug Enforcement Administration agents familiar with the Bronson conspiracy to testify falsely without ordering them to conform their testimony to the Evidence they marshaled between December 8, 2008 and February 10, 2009, which Hemp believes prejudiced the Grand Jurors. United States v. Williams 504 U.S. 36 (1992). Hemp makes the foregoing claims solely on his own personal knowledge, he is quite adamant that he was not present at a drug meeting on December 8, 2008 and that he had no Encounters with Geneo Bronson and his associates at no other point in time besides February 10, 2009.

the concealment phase of the conspiracy. But see, Lee v. Illinois 476 U.S. 530 (1986): On the other hand, the statement of a co-conspirator not on trial is not admissible where given in Response to police interrogation upon being told he had been implicated by another, A Reality of the criminal process is that once partners in a crime Recognize the "jig is up," They tend to lose any identity of interest and immediately become antagonists, Rather than Accomplices." That is precisely the case with Bronson, Huffman and Hadden looking for a way out of the deseperate situation have collectively set their sights not on an accomplice but A patsy.

(6)

## Prosecutorial Misconduct

Federal Courts in certain circumstances have common law, inherent, or supervisory authority to protect the integrity of the grand Jury's decision making function. Noting that the court must give "due deference to the grand Jury's status as independent body", the district court also has responsibility not accept indictments that are the product of the prosecutor's subversion of that body. Mooney v. Holohan, 294 U.S. 103 (1935). (The United States Supreme Court made clear that deliberate deception of a court and jurors by the presentation of known false Evidence is incompatible with rudimentary demands of justice.) Where lower Federal Courts view misconduct dismissals as reserved for "very limited and very Extreme Cases", scienter often becomes an important factor in determining whether action of the prosecutor was "Egregious" or "Flagrant". Thus, as to the introduction of false testimony before the grand Jury, the court requires prosecutor knowledge of it's falsity. Napue v. People of the state of Illinois, 360 U.S. 264 (1959). For the purpose of this review, the Court should consider the following factor in determining "prosecutorial misconduct" which may justify a dismissal on a nonconstitutional ground, after kemp demontrates such conduct by specific facts on this point: "any presentation of Evidence that puts before the Jury a deceptive or false case compared to the Evidence known to the prosecutor, that sets out to prevent the grand Jury from Exercising

its independent authority Requires such dismissal. Mooney, 294 U.S. at 103. See white v. Ragen, 324 U.S. 760. Compare Jones v. Commonwealth of Kentucky, 6 Cir., 97 F2d 335, 338, with Mooney v United States 352 U.S. 1. The same Result obtains when the States although not soliciting false Evidence, allows it to go uncorrected when it appears. Special Agent David F. Reames asserted in his Affidavit in support of Complaint against Kemp, along with his alleged Co-Conspirators; Bronson, Huffman, and Hadden; A) that agents knew through a confidential and Reliable source that Bronson was attempting to purchase approximately Five kilograms of powder Cocaine on February 10, 2009 and that he arranged with others to pool their money in order to make the drug buy [6]; b) That upon that intelligence a surveillance unit set up at 1246 Hopple St.

---

[6] See Fed. Evid. R. 801(d)(2)(E): The statement offered against a party andis a statement by a co-conspirator of a party "during the course and in futherance of the conspiracy. The contents of the statement shall be considered "but alone are not sufficient to Establish the declarant's authority under subdivision (C)...(D), or the Existence of the conspiracy and participation therein of the declarant and the party against whom the statement is offered under subdivision (E) bRule witch v. United States, 336 U.S. 440 (1949); Wong sun v. United States, 371 U.S. 471 (1963)

(8)

On February 10, 2009, where Bronson was observed by D.E.A. agents and other Narcotic agents meeting with the C.I. to discuss the arrangements to purchase 5 kilograms of cocaine. Huffman, while the discussion took place, was observed waiting at the Wendy's located 1246 Hopple St.; (C) Later that day, Bronson returned to the initial meeting location in the company of Huffman, Hadden and Kemp. Bronson consummated the drug transaction by placing a large bag of money in the trunk of a blue Honda and retrieved a bag of what he thought was cocaine. Agents "learned" that the source of money came from Kemp and Huffman; d) Once Bronson had possession of the bag, he got in a white Toyota driven by Hadden which Huffman and Kemp were passengers. E) Immediately there afterwards, an arrest was attempted. Hadden fled striking a police vehicle in the process. F) Huffman and Kemp exited the vehicle and continued to flee but were apprehended soon afterwards. The affiant stated, prior to describing his version of the order of events, that "since this 'affidavit' is being submitted for the limited purpose of establishing probable cause supporting the arrest of Huffman, Hadden, Kemp and Bronson", I have not included each and every fact and circumstance which I am aware. I have only set forth those facts which I believe are necessary to establish probable cause."

(9)

Kemp asserts Agents Reame's account is untruthful irrespective of his admission that the affidavit he submitted only included limited facts and circumstances, and the other so-called facts and circumstances he and other agents testified to at the grand jury, namely, that Kemp was present at a drug meeting along with Bronson and the C.I. at a designated location on December 8, 2008, was a patents lie, which he believes prejudiced, or weighed in heavily, on the grand jurors' decision to indict him. Napue v. Illinois, 360 U.S. 264 (1959) ("The court held the same result obtains when the state, although not "soliciting false evidence, allows it to go uncorrected when it appears.") Id., at 269. And primarily on this basis and an additional seperate constitutional basis he implores the court to dimiss the indictment or, in the alternative, remove the variance from his indictment for purpose of illustrating a more accurate account of the sequence of events as observed by the D.E.A and other narcotic agents on February 10, 2009[6]

[6] See American Bar Association, Project on standards for Criminal Justice Prosecution Function and the defense Function § 3.1(A) "When the reliability of a given witness may well be determinative of guilt or innocence "nondisclosure of evidence" affecting credibility fall within this general rule. Napue supra, at 269.

(10)

Hemp now turns the Courts attention to the fact he has not Received discovery or bill of particulars since his apprehension on February 10, 2009.[7] Fundamental Fairness in an adversarial System Requires that the defense be given the tools with which it can obtain Existing Evidence that challenges the prosecutor's case, Either by tending to Establish affirmatively the defendant's Innocence or by casting doubt upon the persuasiveness of the prosecutor's Evidence. Here hemp has personal knowledge of his innocence that surely would cast doubt upon the strength of the prosecutor's case; however, in our adversarial system of Justice, personal knowledge in the absence of some tangible is irrelevant, which the district attorney is quite well aware. The defendant's counselor filed for discovery and bill of particulars on February 24, 2009, and instead of a responsive disclosure, the government has met hemp's Requests with nondisclosure and irrelevant memos assuring his attorney that he's got something on the

[7] See American Bar Association, Project on standards for Criminal Justice, Discovery and Procedure Before Trial § 2.1(d) to the Extent this places a burden on the large prosecution offices, procedures and Regulations can be established to carry that burden and to insure communication of all Relevant information on each case to every lawyer who deals with it.

the defendant.[8] That's not going to cut it. United States v. Cronic, 466 U.S. 648 (1984) "The very premise of our adversary system" the Cronic Court held " is that partisanship advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free" and it was this "very premise" that underlies and gives meaning to the Sixth Amendment" "The Right to effective assistance," the Cronic opinion noted is "the Right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing". In an E-mail sent to Kemp's counselor the district attorney admits practically that the charges lodged against the defendant are a farce but then states contrariwise that there Exists "other Evidence against Kemp, I promise! Rule 16 not withstanding," I am certainly willing to let you talk to my agents... As an incentive, I believe I might be able to let all these guys plead to 3 kilos

[8] The defendant's attorney sent him copies of his alleged co-con-spirators' change of plea, Referencing their individual hearing dates. His query is what Relevance does their individual decisions have to him. Can their admissions inculpate him irrespective of their motives. See Advisory Committee notes 1972 Proposed Rule 801(d)(2)(E): "The limitation upon the admissibility of statements of co-conspirators to those made "during the course and in futherance of the conspiracy" is an accepted pattern" The Rule is consistent with the position of the Supreme Court in denying admissibility to statements made after the object of the conspiracy

(12)

instead of 5, but only if those who have failed to come in and talk
will do so ASAP"[?]One very extremely important question must
be raised in the context of Brown v. Illinois, infra and perhaps Beck
v. Ohio, infra and Wong Sun v. United States, supra: "minus the
inculpatory testimony of kemp's alleged co-conspirators, whose
motives and credibility will undergo the severest crucible of
adversial testing, to be certain, what extrinsic evidence does
the government have marshaled by the D.E.A and other narcotic
agents to disprove that the defendant was merely present, having
entered into no agreement, having no unity of design or purpose or
interest in the objective of the conspiracy on the day he was arrested.
United States v. Bostic, 480 F.2d 965 (6 cir (Tenn), 1973). Mere knowledge or
approval, without participation, does not make one a party to a
conspiracy, but there must be intentional participation in the
transaction with a view to the futherance of the common design
and purpose, id. Perhaps to make up for the deficiency in proof the district
Attorney alleges falsely, and unethically that kemp was at a drug
meeting, at some point in time well before the defendant's appre-
-hension to give the illusion of "common purpose, interest and
agreement with those who actually had a mens Rea. Mooney
v. Holohan, 294 U.S. 103 1935. To prevent the unjust prosecution,
the Faustian manipulation of the accuser, kemp begs the
court to acknowledge that every citizen in our country has
a

has either failed or been achieved. Krulewitch, supra

(13)

constitutional Right to disclosure, notwithstanding the Respective decisions that so-called Co-Conspirators may or may not make Concerning their individual circumstance. As stated in United States v. Bagely, 433 U.S. 667 (1985), "the prosecutor's failure to Respond to a Brady Request may impair the adversary process..." "And the more specifically the defense Request certain Evidence, thus putting the prosecutor on notice of it value, the more Reasonable it is for the defense to assume from the nondisclosure that the Evidence does not Exist, and to make pretrial and trial decisions on this assumption." [9] Hemp is certain that the government cannot prove its underlying factual theory that he had interest in the conspiracy to distribute a narcotic drug to wit: Cocaine stemming from December 8, 2008, at an alleged drug meeting to February 10, 2009, to actually

[9] However, with every assumption comes a Risk. But the Government in United States v. Bagely, 473 U.S. 667 (1985) agrees with hemp's perspective that a materiality standard more favorable to the defendant Reasonably might be adopted in specific cases. The Government noted in Bagely that an incomplete Response to a specific Request not only deprives the defense of certain Evidence, but also has the effect of Representing to the defense that the Evidence does not Exist. In Reliance on this misleading Representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued.

(14)

Consumating the agreement and arrangements of the combination when Bronson made the final transaction with the Evidence it has in its possession. His uncertainty only lies, justifiably, in having Recieved no discovery or any information that provides him Reasonably Sufficient notice of the Evidence against him, which would assist him in laying the foundation of an affirmative defense Bagley, Supra; Agurs, infra. It cannot be overlooked, most significantly, in light of the argument at this point, that the knowledge element of the Mooney principle was held to be the collective knowledge of the prosecution, not the knowledge of the individual prosecutor. id, 92 S.Ct. 763. Taken together, Mooney and its progeny Establish a Constitutional obligation of the prosecution as an Entity not to decieve the fact finder or allow it to be decieved by the prosecution wit- -nesses. Giglio v. United States, 405 U.S. 105, 154 (1972)(Impeachment Evidence as well as Exculpatory Evidence falls within the Brady Rule.) This obligation Requires that it not suborn perjury, not use Evidence known to be false, and not allow known false test- -imony of its witnesses to stand uncorrected. See, generally People v. Savvides, 1 N.Y. 2d 554, 557 (" the jury's Estimate of the truthfulness and Reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.")

(15)

where the government fails to fulfill that obligation, it matters not wether its failure is attributable to negligence or intent to deceive. The state in either event bears a responsibility for possibly denying the defendant a fair trial. It matters not whether the witness giving false testimony is mistaken or intentionally lying; if the prosecution knows that the witnesse's statement is untrue, it has a duty to correct it. Bagley, supra at 108. hemp asserts regardless of the source of the untruthful claim that he was present at a drug meeting on December 8, 2008, whether it debouched from the D.E.A or the district attorney, is immaterial, the point is the government stands on this false theory and intends to support it with tainted testimony. Napue v. Illinois, 360 U.S. 264. Considering the fact that Bronson was on Federal parole at the time of the transaction, Huffman himself recently released from state prison more than likely on post-release control at the time of his arrest and Hadden nearly running over Federal agents in his attempt to flee from the crime area ; considering there desperate situation, each desperate to minimize the punishment they know is clearly inevitable, it would not be overreaching to infer that the district attorney is exploitating the individual confederates vulnerabilities. As stated by the New York Court of Appeals in a case somewhat similar to this one, People v. Savvides, 1 N.y. 2d 554, 557: "It is of no consequence

(16)

that the falsehood bore upon the witness' credibility. Rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way Relevant to the case, the district attorney has the Responsibility and duty to correct what he knows to be false and elicit the truth. *** That the district attorney's silence was not the Result of guile or a desire to prejudice, matters little, for its impact was the same, preventing, as it did, a trial that could in any Real sense be termed fair." [10] The Court in Agurs noted: " When the prosecutor Recieves a specific and Relevant Request the failure to make any Response is seldom, if ever, Excusable." United States v. Agurs, 427 (IA.97(1976); James v. Commonwealth of Kentucky 6 Cir. 84 Fend 335, 338. The Agurs Court Relied on and Reformulated the Agurs standard for the materiality of undisclosed Evidence in two subsequent cases aRising outside the bRady context. The second case is Relevant here which is grounded on Strickland v. Washington, 466 U.S. U.S. 668 (1984). The Agurs Court held that a new trial must be granted when Evidence is not introduced because of the incompetence of counsel only if " there is a Reasonable pRobability that, but for counsel's unprofessional Errors, the Result of the proceeding

[10] See, generally, Fed. Civ. R. 37

(17)

Would have been different." Id., at 694. Kemp simply ask that his counselor Explore and investigate thoroughly the issues he argues laboriously in this motion. This is the course he prefers be trekked. At this point the defendant does not claim that his counselor is ineffective; however, if the issues he has raised are not brought to bear competency will become an issue, because Kemp will be forced to proceed to trial on a defective indictment and face the possibility of conviction grounded on false Evidence, because "the prosecution's case was not made to "survive the crucible of meaningful adversarial testing." United States v. Cronic, 466 U.S. 648 (1984). In the alternative, should the court disagree with the defendant's assertion that his indictment is fatally detective Ex parte Bain, supra, then perhaps the Fourth amendment issue will garner its attention, which will only be briefly discussed in this motion. Beck v. Ohio, 379 U.S. 89 (1964); Brown v. Illinois, 422 U.S. 590 (1975); Sokolow v. United States, 490 U.S. 1 (1989).

III. The central theme and objective of this motion is to point out to the court 1) that there Exist no independant proof to support the allegations contained in the accusatory pleading lodged against Kemp and 2) that the government is with- -holding Brady material which yields to the that fact.

(18)

In Beck v. Ohio, 379 U.S. 89 (1964), the court in determining the con-
-stitutional validity of the petitioner's arrest queried whether
at the moment the arrest was made, the officers had probable
cause to make it whether at that moment the facts and
circumstances within their knowledge and of which they had
reasonably trustworthy information were sufficient to warrant
a prudent man in believing that the petitioner had committed
or was committing an offense. Brinegar v. United States, 338
U.S. 160; Henry v. United States, 361 U.S. 98 At the precise moment
Kemp arrived at the shell gas station located at Hopple St. and
Central Ave. on February 10, 2009, the Drug Enforcement Admin-
-istration agents ("D.E.A") along with other narcotic agents
did not obtain through independant observation, prior to
apprehending him, file any surveillance, any information
from a reliable confidential informant, or any intercepted
wire communication)[1] during the course and in futherance
of the conspiracy[2], any reasonably trustworthy

[2] Katz v. United States, 389 U.S. 347 (1967) For some years
the court was of the view that for there to be a fourth
Amendment search there must have been a physical intrusion
into "a constitutionally protected area. Silverman v. United
States, 365 U.S. 505 (1961). these area were those enumerated
in the 4th Amendment itself: "persons."

(19)

information that was sufficient to warrant a prudent man to infer" that kemp's purpose was conspiratorial in nature when he approached the vehicle of the conspirators Hadden, Huffman, and Bronson, who was in the process of making the illicit drug transaction at the moment of kemp's arrival. It should be noted for the record that Hadden, Huffman and Bronson had been at the location they were arrested earlier that day work-ing out the details and particulars of how to consumate the drug transaction with the C.I.; Huffman, remaining in the vehicle with Hadden, communicated with Bronson via cell phone as Bronson and the C.I. worked out the arrangement for the drug buy. The evidence in the government's possession, the defendant is certain, preponderates in his favor revealing he had no involvement or connection whatsoever in that scheme like the other passersby who the D.E.A. observed conversing with Huffman and Hadden at the gas station

including the bodies, Schmerber v. California, 384 U.S. 757 (1966) and attire Beck, 379 at 89, of individuals, houses" including apartments, Clinton v. Virginia, 377 U.S. 158 (1964), hotel rooms. Stone B v. California, 376 U.S. 483 (1964)... and "effects" such as automobiles. Preston v. United States, 376 U.S. 364 (1964). The ultimate question under katz is a value judgement, namely,

(20)

prior to kemp's illegal arrest, kemp's interest, no different than the passer by, could not be assumed criminally motivated or aligned with the conspirators in the absence of any inculpatory evidence indicating otherwise prior to his arrest. Krulewitch v. United States, 336 U.S. 440 (1949); Wong Sun v. United States, 371 U.S. 471 (1963); See, generally, State v. O'Bremski, 70 Wash. 2d 425 (1967) (the "independent source limitation" on the taint doctrine; "It is one thing to say that officers shall gain no advantage from violating the individual's right; it is quite another to declare that such a violation shall put him beyond the law's reach even if his guilt can be proved by evidence that has been obtained lawfully"). The defendant will demonstrate by the following general definition of conspiracy and referencing the case of United States v. Renfro, 620 F.2d 569 (C.A. 6 (Mich.), 1980) the degree of proof that was necessary for the D.E.A to have formed that level of objective justification for detaining him and then consequently placing him under arrest.

"whether, if the particular form of surveillance practiced by the police is permitted to go unregulated by Constitutional Restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society.

(21)

It has been said that there is probably no crime an Exact definition of which it is more difficult to give than the offence of Conspiracy. See, generally, Pinkerton v. United States, 45 F 2d 252, 254 (C. A. 5) A general outline of the elements of a criminal Conspiracy has been well stated in 15 A. C. J. S. Conspiracy sec. 1 et seq. to be (1) An object to be accomplished (2) A plan or scheme Embodying means to accomplish that object (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means Embodied in the agreement, or by any Effectual means (E.g... "The government must present Sufficient Evidence to demonstrate that the defendant A) "knew of the Conspiracy and that he intended to b) "join" and c) associate himself with its criminal design and purpose." United States v. Auerbach, 913 F 2d 407, 414-15 (7th Cir. 1990), but mere association with, or knowledge of, an Existing Conspiracy is not enough to show participation in that Conspiracy. United States v. Perlaza, 818 F 2d 1354, 1359 (6th Cir) though presence or a single act will suffice if circumstances show that the act was intended to advance the Ends of the Conspiracy United States v. Simone, 172 S. ct. 584, and Evidence of even a slight connection between

the defendant and the conspiracy will be sufficient to convict. United States v. Xheka, 464 U.S. 993, 104 S.Ct. 486 (1983); United States v. Dempsey, 733 F.2d 392, 396 (C.A.6) A conspiracy has been characterized, rather than defined, as a partnership in criminal purpose, as a partnership in crime, and as a criminal partnership. The unlawful combination being the gist of the conspiracy, it follows that there must be an agreement of some kind willingly entered into by the parties to it There must be unity of design or purpose, a concert of will and endeavor, comprising what has been agreed to. United States v. Bostic, 480 F.2d 965 (C.A.6 (Tenn), 1973) Mere knowledge or approval, without participation, does not make one a party to a conspiracy, but there must be intentional participation in the transaction with a view to the furtherance of the common design and purpose. id. For Instance, in United States v. Renfro, 620 F.2d 569 (C.A.6 (Mich), 1980)[13] "(Renfro") independent evidence was gathered to prove mens rea, and his co-conspirator's

[13] Renfro was convicted in the U.S. District Court for the Eastern Division of Michigan of conspiracy, possession of Heroin with intent to distribute, and distribution Heroin in violation of U.S.C §§ 841 (A)(1) and 846. See, generally, Gebardi v. United States, 287 U.S. 112 (1932); United States v. Bayer, 331 U.S. 532 (1947); United States v. Padilla, 508 U.S. 77 (1993)

(23)

## Independent Proof of Renfro's Guilt

individual confessions implicating him were admitted in Evidence at his trial, though they were not made during the course and in futherance of the conspiracy. Ibe, whisler v United States, 330 (U.S. 440 (1948), an undercover narcotic agent observed directly what they testified to. In that case, Mary Brown ("Brown") an undercover narcotic agent with the Wayne County Sheriff's Department contacted James Griffin ("Griffin") seeking to buy 5 ounces of Heroin for $5,550.⁰⁰ A.) Griffin indicated that he could arrange such a transaction. B.) He had Brown meet him at his home, they than met up with Andrea Payne ("Payne"), c.) who informed Brown that a freind of hers just procured about 10 pounds or so of Heroin and could sell Brown the 5 ounces she sought to purchase. D.) Payne took the agent and Griffin to the home of Renfro, who gave Payne a $50.⁰⁰ test sample of Heroin so the potential buyer could test its quality. E.) Brown testified that when Payne returned to the car she told her that, while she was in Renfro's residence, she helped weigh and package part of the ten pounds or so of Heroin. F.) Brown informed both Griffin and Payne she wanted to purchase 5 ounces of Heroin from Renfro, after Griffin tested it confirming it was of high grade. G.) After Returning to Payne's home, Payne made a phone call to arrange the drug buy. H) Brown testified that she heard Renfro's name mentioned, I but Payne testified that she placed the call to a person Nicknamed "Cherry". J.) Payne told the second party on the phone  that Brown was pleased with the sample

(24)

and the deal for the Remaining Heroin could be Consumated. K)
Brown covertly placed a phone call to her fellow officers that
the Heroin would be delivered to Payne's Residence in approx-
-imately an hour. L.) Payne informed Brown Renfro's girlfriend
would make the delivery and she would be driving a cadillac. M)
Payne and Brown counted the buy money, N) and thereafter -
-wards the undercover agent made another call to her fellow agents
updating them. O) A surveillance team had followed Brown, Griffin
and Payne, when they went to Renfro's house to obtain the test
sample. From that point until the arrest were made, the house
was constantly under Surveillance. P.) The Surveillance team
observed Tandee Leslie ("Leslie") Renfro's girlfriend, leave his
house driving a new Cadillac and proceed to Payne's home. Q)
After arriving at payne's Residence, Leslie, Brown, and Payne
went into a back Room where the transaction was consumated
.R.) As Leslie proceeded to leave, Brown went back upstairs and
made another call to Relay to the Surveillance team that
the transaction had taken place. S) Leslie was followed by
the narcotic Squad Back to Renfro's home. T) After leaving
Payne's home Brown gave the Surveillance team the prear-
-Ranged Signal to close in to make the arrest of both Brown
and Griffin. U) Payne, leaving her home shortly afterwards,
Returned to Renfro's Residence where she was finally
arrested along with Andrew Renfro, Tandee Leslie and an
unidentified black woman.

In Renfro's appeal, the following pertinent claim(s) were set forth: A) that the District Court erred in refusing to suppress evidence; b) in permitting co-conspirators statements to be admitted into evidence, and c) and in determining that there was sufficient evidence to support the conviction for conspiracy. The Sixth Circuit Court of appeals, finding the evidence seized in Renfro's home admissible, found no doubt that there was sufficient evidence that he was an active participant in the conspiracy to sell Heroin to Brown, and though Renfro claimed that Griffin and Payne were not members of the conspiracy but rather they were agents for the buyer, Brown, the court found that claim unpersuasive. Irrespective of Payne's and Griffin's interest(s) only seeming different from those of Renfro's in consumating the drug transaction, the court found such appearance as not precluding them from being considered as co-conspirators finding instead that they both knowingly and intentionally participated in the violation of the laws of the United States, and their acts furthered the joint purpose of violating those laws and consumating an illegal transaction.

(26)

Again, Kemp asserts, "Mere knowledge or approval, without participation, does not make one a party to a conspiracy, but there must be intentional participation in the transaction" with a view to the furtherance of the common design and purpose. Bostic, 480 F.2d, at 965. Unlike Renfro, the Evidence in Kemp's case does not Remotely show that the D.E.A. agents saw the defendant "Engage in any illegal activity" before his arrest (i.e. Riding around with Bronson and the other two confederates prior to his arrest, or in any other way connected to the Bronson combination at the precise moment of his arrest on February 10, 2009), or that they heard, smelled, or other wise percieved anything else to "give them grounds for belief that he had acted or was then acting unlawfully Beck v. ohio 379 U.S 89 (1964). And where, in the first instance, the D.E.A. agents Realized this shortcoming "a lie" was manufactured that Kemp was present at a drug meeting with both Bronson and the C.I on December 8, 2008.

_____

13 See Draper V. United States, 358 U.S 307. In that case the Evidence showed that a named special Employee of nartcotics agent who had on numerous occasions given Reliable information had told the arresting officer that the defendant, whom he described minutely, had taken Residence at a stated address and was selling narcotics to addicts in Denver. Other Reliable information that was disclosed to the arresting officers prior to Draper's arrest was found to be consisted with Fourth Amendment Standards.

that he was observed arriving and departing to and from that meeting in a specified vehicle, and the district attorney anxious and overly ambitious to convict him, to put him knee deep in the conspiracy, to establish by any means a connection, agreement, and interest in the combination adopted that lie, Mooney v Holohan, 294 U.S. 103 (1935). Where Kemp can prove by the evidence in the government's possession, which it refuses to disclose to him Brady v. Maryland 373 U.S. 83, that he did not even have a slight A) connection or B) agreement or C) interest in the conspiracy United States v. Xheka, 464 U.S. 993 (1983), not only is it impermissible to mark him as an accomplice, where the government has failed utterly to shoulder its burden that he was connected or intertwined in Bronson's activities and to infer from that connection his agreement in the furtherance of criminal activity Regina v. Bass, 11 Mod. 55, 88 Eng. Rep. 881, 882 (K.B. 1705)[14], but the the ultimate constitutional question is the illegal seizure of the defendant's person, Wong Sun v. United States, 371 U.S. 471. Brown v. Illinois, 422 U.S. 590 (1975)

[14] The prohibition against criminal conspiracy does not punish mere thought; the criminal agreement itself is the actus reus. "the very assembling together was an overt act." id. Kemp contends the government must prove his assembling with Bronson was criminally motivated. United States v. Shabani, 513 U.S. 10 (1994)

(28)

In Wong Sun, the court pronounced the principles to be applied where the issue is whether Statements and other Evidence obtained after an illegal arrest or search should be excluded. In that cases, federal agents elicited an oral statement from defendant Toy, who was placed under arrest after forcible entry into his place of business; the court of appeals found that there was no probable cause for the arrest. The Supreme Court agreed. 371 U.S. at 479. Toy's statement, which bore upon his participation in the sale of narcotics, led the agents to question another person, Johnny Yee, who actually possessed narcotic. Yee in turn pointed the finger back at Toy and another Chinese Nick named "Sea Dog", who was later indentified by Toy as Wong Sun. Toy led the federal agents to Wong Sun's Residence and upon gaining entry to his home the agents placed him under arrest. After arraignment, Wong Sun was released on his own Recognizance. Several day later, he Returned voluntarily to give an unsigned Confession. The Supreme Court Ruled that Toy's decla-rations and the contraband taken from Yee were the fruits of the illegal action and should not have been admitted as Evidence against Toy. Id., at 484, 488. It held that the statement did not Result from "" an intervening independent act of a free will," and that it was not Sufficiently an act of free will to purge the primary taint of the lawful invasion" Id., at 486.

unlawful

(29)

With Respect to Wong Sun's confessions, the court held that, in light of his lawful arraignment and release on his own Recognizance, and of his voluntary Return several day later to make the inculpatory Statement, the connection between his unlawful arrest and the confession had "become so attenuated as to dissipate the primary taint" Nardone v United States, 308 U.S. 338. The Wong Sun Court states the governing principle of Kemp's Fourth Amendment question: "Whether granting establishment of the primary illegality, the Evidence to which instant objection is made has been come at by Exploitation of that illegality, or instead by means Sufficiently distinguishable to be purged of the primary taint". Maguire, Evidence of Guilt, 221 (1959)." Id., at 487, 488. Very Simply, if the D.E.A. agents had not detained the defendant beyond the limits of a normal Routine Terry detention, or investigatory detention, in light of the fact there Existed no evidence Remotely tying him into the conspiracy to determine why he fled upon apprehension giving him enough leeway to explain that perhaps he walked into a situation he totally had no knowledge of Rather than just throwing him into the cauldron with the Rest of the dung, the others would have had no one Else to incriminate spuriously besides themselves. Dapue V Illinois, 360 U.S. 264 ,269 (1959)

(30)

So the defendant correctly objects to any inculpatory Evidence that has been come at by Exploitation of his illegal Seizure.[15] The Exclusionary Rule was applied in Wong Sun primarily to protect Fourth Amendment Rights. Protection of the Fifth Amendment Right against Self-incrimination was not the Court's paramount Concern there. To the extent that the question whether Toy's Statement was voluntary was Considered, it was only to Judge whether it "was Sufficiently an act of free will to purge the primary taint of the Fourth Amendment violation. Id at 486. (Emphasis added). The defendant's post arrest statement is not at issue. It actually support his assertion of having no know--ledge of the principal offender Bronson's activities. However, it is the district attorney's motive to use Kemp's alleged co-Conspirators' confessions that causes him considerable grief because the indictment was founded on a lie and additional lies will be used to support it should he risk proceed-ing to trial.

[15] The defendant denounces any attempt to liken his Reaction of fleeing from the D.E.A agents to Bronson and others Reaction to flee, because the evidence clearly is Sufficient in proving they knew Exactly why they were being apprehended on February 10, 2009 whereas the Evidence is Sparse in proving and Reaching the same conclusion in Kemp's case.

(31)

The Fourth Amendment cabins government authority to intrude on personal privacy Katz v. United States, 389 U.S. 347 (1967), and Security by Requiring that searches and seizures be supported by probable cause. Brown v. Illinois, 422 U.S. 590 (1975). By Requiring Reasonable suspicion as a prerequisite to such seizures, the Fourth Amendment protects innocent persons from being Subjected to "over bearing or harassing police conduct carried out solely on the basis of imprecise sterotypes of what criminals look like, or on the basis of irrelevant personal characteristics such as race. Terry v. Ohio 392 U.S. 1 (1968). To deter such Egregious police behavior, the Court held that a suspicion is not reasonable unless officers have based it on specific and articulable facts. Id., at 21 An arrest without a warrant by passes the safe guards provided by an objective predetermination of probable cause, and substitutes instead the far less Reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgement." Whether or not the Requirement of Reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise a principal incentive now existing for the procurement of arrest warrant would be de-stroyed". Wong Sun v. United States, 371 U.S. 471

(32)

It is possible that the informer did in fact Relate information to the D.E.A. which constituted probable cause for Bronson's arrest and those who entered into an agreement with him, which the D.E.A. agent's Surveillance should yield. However, that information has no relation to hemp to any degree which warranted his arrest. The custodial interrogation that he was subjected to after his arrest was more akin to the inquisition of yore than the more modern in vogue techniques employed by civil agents in a more civilized society, as such as ours. United States v. Sokolow, 490 U.S. 1 (1989). And to be Sure, he intends to challenge the constitutional validity of his arrest and it will be incumbent upon the prosecution to show with considerably more specificity, what information the D.E.A. agents relied on prior to his arrest and why the agents thought the information was credible. The Court may assume that the officers acted in "good-faith" in arresting the defendant. However, good faith on the part of the arrest-ing officers is not enough." Henry v. United States, 361 U.S. 98. If Subjective good faith alone were the test, the protection of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects", only in the discretion of the police. Wong Sun, Supra

(33)

In Conclusion, kemp implores the honorable judge to consider the merits of his claims that his indictment is fatally defective and the very likely possibility that the district attorney is hiding that fact by withholding Brady material vital in assisting him in Establishing the averments herein Raised, and that he has Received no discovery or bill of particulars since his counselor Requested both on February 24, 2009. The defendant Request that an Evidentiary hearing be held because the foregoing issues Raised Exceed the Realm of this motion.

Respectfully Submitted,
David kemp
Butler County Jail
705 Hanover St
Hamilton, Ohio
45011

Certificate of Service.

I hereby certify that a copy of this Motion to Dismiss was sent to the district attorney at 221 E. 4th St. Suite 400 on this day 9 of June, 2009
Cin. OH 45202

David kemp